**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **HEIZER AEROSPACE INC.,** | ) |
| **a Missouri corporation,** | ) |
| **HEIZER DEFENSE, LLC,** | ) |
| **a Missouri limited liability corporation,** | ) |
| **CHARLES K. HEIZER,** | ) |
| **THOMAS C. HEIZER,** | ) |
| **HEDY-JANE HEIZER-GAHN,** | ) |
| **and JACOB W. MAHN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **Civil Action No. ____4:13-cv-1784____** |
| **v.** | ) |
| | ) |
| **DOUBLETAP DEFENSE LLC, f/k/a** | ) |
| **HEIZER TECHNOLOGIES, LLC;** | ) |
| **CENTRAL HOLDING CORP.,** | ) |
| **RAYMOND KOHOUT,** | ) |
| **and MARVIN DUFNER,** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT FOR DECLARATION OF CORRECTION OF INVENTORSHIP**
**AND TRANSFER OF RIGHTS FOR PATENT NO. 8,495,831; AND**
**FOR DECLARATION OF INVALIDITY AND UNENFORCEABILITY,**
**OR ALTERNATIVELY CORRECTION OF INVENTORSHIP AND**
**TRANSFER OF RIGHTS FOR DESIGN PATENT NO. D686,685**

COME NOW Plaintiffs Heizer Aerospace, Inc., Heizer Defense, LLC, and Charles K. Heizer, Thomas C. Heizer, Hedy-Jane Heizer-Gahn and Jacob W. Mahn ("Plaintiffs") and for their claims against Defendants DoubleTap Defense LLC and Central Holding Corp. ("Defendants") and Defendants Heizer Technologies, LLC, Raymond Kohout and Marvin Dufner, state as follows:

## NATURE OF THE ACTION

1.      This is an action concerning the inventorship and ownership rights with respect to U.S. Patent No. 8,495,831 B1 ("the '831 Patent"), and the validity, enforceability, inventorship and ownership rights with respect to U.S. Design Patent D686,685S ("the '685 Design Patent"). True and correct copies of the '831 Patent  and the '685 Design Patent  are attached hereto as Exhibit 1 and Exhibit 2, respectively.

2.      The '831 Patent entitled "Two Shot Pistol," issued on July 30, 2013, from U.S. Patent Application Ser. No. 12/456,134 ("the '134 Application") filed on December 21, 2011, which in turn claims priority to U. S. Provisional Patent Application No. 61/426,458 ("the '458 Provisional Application", filed on December 20, 2010, and named Raymond B. Kohout as the sole inventor.  On its face the '831 Patent lists DoubleTap Defense, LLC as the assignee of the '831 Patent.

3.      The '865 Design Patent entitled "TWO SHOT PISTOL" issued on July 23, 2013, from U.S. Design Patent Application No. 29/409,263 ("'263 Design Application") filed on December 21, 2011.  On its face the '865 Design Patent lists DoubleTap Defense, LLC as the assignee of the '865 Design Patent.

## THE PARTIES

4.      Plaintiff Heizer Aerospace Inc. ("Heizer Aerospace") is a Missouri corporation with its principal place of business in Jefferson County, Missouri.

5.      Plaintiff Heizer Defense, LLC ("Heizer Defense") is a Missouri limited liability company with its principal place of business in Jefferson County, Missouri.

6.      Plaintiff Charles K. Heizer ("Charles Heizer") is a resident of St. Louis County, Missouri.

7.     Plaintiff Thomas C. Heizer ("Tom Heizer") is a resident of St. Louis County, Missouri.

8.     Plaintiff Hedy-Jane Heizer-Gahn ("Hedy Heizer") is a resident of the St. Louis County, Missouri.

9.     Plaintiff Jacob W. Mahn is a resident of Sainte Genevieve County, Missouri. Hereafter, acts relating to developments of individuals Charles Heizer, Thomas Heizer, Hedy-Jane Heizer-Gahn and/or Jacob Mahn are referred to at times as those of members of "the Heizer Group".

10.     Upon information and belief, Defendant DoubleTap Defense, LLC ("DoubleTap") is a Georgia limited liability company with its principal place of business in St. Louis County, Missouri 63129.  Upon information and belief DoubleTap was formerly named Heizer Technologies, LLC ("Heizer Technologies").  Upon information and belief, DoubleTap is not registered to do business in the State of Missouri.

11.     Upon information and belief, Defendant Central Holding Corp. ("CHC") is a Missouri corporation with its principal place of business in Lake Ozark, Missouri.

12.     DoubleTap and CHC have represented that DoubleTap and CHC are affiliate companies, and that DoubleTap is the assignee of certain of CHC's assets, including all of its intellectual property and proprietary rights.  Hence, upon information and belief, it is pled DoubleTap and CHC are affiliate companies, and DoubleTap is the assignee of certain of CHC's assets, including all of its intellectual property and proprietary rights.

13.     Upon information and belief, Defendant Raymond Kohout is a resident of Camden County, Missouri, and at relevant times herein was an officer of DoubleTap and CHC.

14.     Upon information and belief, Defendant Marvin Dufner is a resident of St. Louis County, Missouri, and at relevant times herein was an officer of DoubleTap and CHC.

3

## JURISDICTION AND VENUE

15.     This action includes Counts brought under the patent laws of the United States, 35 U.S.C. §101 *et seq.*, including 35 U.S.C. §§ 102, 115, 116 and 256 Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  This Court has subject matter jurisdiction over the patent matters of this action pursuant to 28 U.S.C. §§1331, 1338, and 2201 *et seq.*

16.     Counts II- IV and VIII – X contain allegations that fall under The Missouri Uniform Trade Secrets Act ("MUTSA") which is codified at RSMo §§ 417.450, *et seq.*, and/or under the common law of the State of Missouri.

17.     Jurisdiction is proper in this Court for all Counts pursuant to 28 U.S.C. §1331, §1338 and §1367(a).

18.     Personal jurisdiction and venue are proper in this Judicial District pursuant to 28 U.S.C. §1391(b) because for purposes of personal jurisdiction and venue a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.  In addition, venue of this action is properly found in this Judicial District pursuant to 28 U.S.C. §1391(b), (c) and (d) because DoubleTap, CHC, Kohout and Dufner are subject to personal jurisdiction in this Judicial District.

## FACTUAL BACKGROUND

### Kohout Seeks Assistance From the Heizers

19.     On October 26, 2010, Mr. Kohout, whom Charles Heizer and his daughter Hedy Heizer and son Tom Heizer, had known for some time, e-mailed Hedy Heizer about meeting with the Heizer family to discuss "firearms manufacturing."

20.     In order to manufacture a product as complicated as a firearm, Mr. Kohout, who has no engineering training, or experience in designing and manufacturing firearms, needed the experience and knowledge provided by the Heizers.  The Heizers all have substantial experience

4

and background in mechanical engineering disciplines.  Charles Heizer also has a Master's Degree in Internal Combustion Engines.

21.     Charles Heizer is the founder of Heizer Aerospace, Inc., an industry leader that specializes in manufacturing large, complex components to the exacting standards of the aerospace industry.  Charles Heizer is also responsible for the design and development of numerous inventions, including milling machines that are accurate to within three one-thousandths of an inch (approximately the width of a human hair) over 100 feet, a machine that can bore a contoured hole, and a heart-lung machine.  Charles Heizer is a named inventor on six U.S. Patents that had issued prior to October 2010.

22.     Charles Heizer also has experience designing and developing firearms.  In the early to mid-1990's, he started to design and develop an automatic weapon with a much higher rate of fire than that then available to the U.S. military.  In 1993, his company was granted a Federal Firearms License, a legal prerequisite to manufacturing any type of firearm.

23.     The first meeting with Mr. Kohout and any members of the Heizer Group occurred when Charles Heizer and Tom Heizer met in this District with Mr. Kohout in late 2010.  At this meeting, and prior to the execution of any type of confidentiality or non-disclosure agreement, Mr. Kohout gave Charles Heizer and Tom Heizer, a single, rudimentary sketch of a gun drawn freehand on yellow legal paper.  The sketch depicted only the exterior of the gun and made no attempt to diagram or describe the interior of the gun or explain how the gun would work.  Furthermore, the gun illustrated in the sketch only contained design elements that were present in numerous other guns currently on the market and/or disclosed in prior patents and publications.

## The Non-Disclosure Agreement

24.     On December 23, 2010, Heizer Aerospace, Inc. and CHC entered into a Non-Disclosure Agreement, signed by Mr. Kohout on behalf of CHC, and signed by Charles Heizer on behalf of Heizer Aerospace.

25.     Pursuant to the Paragraph 1 of the Non-Disclosure Agreement, "Confidential Information" includes:

> a)  tangible information, including without limitation design drawing and conceptual ideas which has been disclosed by the disclosing party to the receiving party and marked as "Confidential", "Restricted", "Secret", or with another similar term;
>
> b)  information which is disclosed orally by the disclosing party and specifically confirmed in writing by the disclosing party as confidential within ten (10) days of such oral disclosure; and
>
> c)  information which is observed by the receiving party during a visit to the disclosing party's facility and specifically confirmed in writing by the disclosing party as confidential within ten (10) days of such observation.

26.     In Paragraph 3 of the Non-Disclosure Agreement, each party agreed that it would protect the confidentiality of the other party's Confidential Information and would not:

> b)  disclose any Confidential Information to any third party (other than as set forth below) without the prior written consent of the disclosing party…
>
> d)  use any Confidential Information of the other party other than to evaluate any potential Project.

27.     The parties also agreed in Paragraph 3 of the Non-Disclosure Agreement, "Upon the written request of either party (as a disclosing party), the other party shall, within a period of thirty (30) days following receipt of written notice, return all copies of Confidential Information provided by such disclosing party to the other party…."

6

**The Heizer Group's Inventions of the Subject Matter Claimed in the '831 Patent**

28.     Members of the Heizer Group had inventive ideas which were completely absent from the sketch provided by Mr. Kohout.

29.     Members of the Heizer Group conceived and reduced to practice the invention of firearms whose design was described and shown in the '831 Patent.  Under their inventive efforts numerous drawings were produced showing the internal mechanisms and exterior developments of the gun.  Each of these drawings bore the following notice: "This drawing is our property.  It can't be reproduced or communicated without our written agreement."  Members of the Heizer Group also directed and created numerous prototype guns based on such designs which were produced by Plaintiffs.

30.     During their development of the gun, members of  the Heizer Group conceived and reduced to practice numerous innovations for the design of the gun, including but not limited to the trigger and sequential firing system, an integral grip, the pivoting barrel, repeated alphanumeric characters used for checkering on the handle rather than standard geometric shapes, such as diamonds that are most typically used, cartridge holding features, the dimensions and the material properties (alloys) of the internal components, and a progressively ported gun barrel.

31.     These innovations were confidential information as defined by the Non-Disclosure Agreement and constituted trade secrets.

32.     Heizer Defense, LLC was formed to design and manufacture guns embodying the creations and inventions of members of the Heizer Group.

**Heizer Group Patent Applications**

33.     On October 28, 2011, Heizer Defense filed a U.S. Provisional Application No. 61/552,499 ("the '499 Provisional Application") entitled "Trigger Mechanism" with the United States Patent and Trademark Office ("PTO") with Charles Heizer as the named inventor.

34.     On October 28, 2012, Heizer Defense filed a U.S. Non-Provisional Application entitled "TRIGGER MECHANISM" in the PTO with Charles Heizer as the named inventor, and that application was assigned to Heizer Defense.   That application was assigned Patent Application No. 13/662,506 ("the '506 Application"), and claimed priority to the '499 Provisional Application.   Both the '499 Provisional Application and the '506 Application contained a written description of the invention described by the claims of these Applications and of the claims of the '831 Patent in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and which set forth the best mode contemplated by Charles Heizer for carrying out his inventions, as described in the '831 Patent.

35.     Other U.S. Provisional Applications and non-provisional applications were filed which named at least one of the following of Charles Heizer, Tom Heizer, Hedy Heizer and Jacob Mahn, as an inventor and which related to the developments of the gun designs of those members of the Heizer Group.

**Defendants' Misappropriation and Conversion of the Heizer Group's Inventions**

36.     Heizer Technologies (now named "DoubleTap") and Heizer Defense engaged in negotiations to enter a joint venture agreement, which ultimately was not consummated.   After such inability to consummate a joint venture agreement, on October 9, 2012, Plaintiffs' counsel advised counsel for Defendants: "Finally, this is a formal demand that your clients, as well as companies identified as Heizer Technologies, LLC and Heizer Firearms, LLC, must immediately

cease and desist using the name Heizer in any manner whatsoever and must also immediately cease and desist using any inventions and other innovations that the Heizers developed for the components in the DoubleTap gun.  We are also putting you and your clients on notice that the Heizers have the right to use their inventions and innovations in guns of their own design and with gun designs that are already in the public domain, but your clients do not have this right and they must not use the Heizers' intellectual property in any way for the Double Tap or for any other firearm."

37.     Numerous prototypes of the gun designs invented by members of the Heizer Group containing confidential information and trade secrets were checked out to Mr. Kohout, ostensibly for use to show potential customers and the trade to market the designs invented by the Heizer Group.

38.     Despite numerous requests for their return, Mr. Kohout has refused to return the prototypes to Plaintiffs.

39.     Without Plaintiffs' knowledge, permission or authorization, on December 22, 2010, Mr. Kohout filed the aforesaid '458 Provisional Application entitled "Two Shot Pistol".  In contrast to the Provisional '499 Application of Charles Heizer, Kohout's '458 Provisional Application had no drawings that showed a trigger assembly, nor did the specification of Kohout's '458 Provisional Application provide a written description of the trigger assembly described in element "d" of Claim 1 of the '831 Patent.

40.     The first filed patent application that described the trigger assembly that is claimed in element "d" of Claim 1 of the '831 Patent was the aforesaid Heizer '499 Provisional Application filed on October 28, 2011.  Charles Heizer was the first person to conceive such trigger assembly.

41.     On December 21, 2011, Mr. Kohout and DoubleTap filed U.S. Patent Application Ser. No. 13/333,513 ("the '513 Application") as a non-provisional application which named Raymond B. Kohout as the sole inventor, and which alleged priority to the '458 Provisional Application.

42.     Later, on July 30, 2013, the PTO issued U.S. Patent No. 8,495,831 ("the '831 Patent") entitled "Two Shot Pistol."  The '831 Patent was based on the '513 Application, and the '458 Provisional Application.  On its face, the '831 Patent lists Mr. Kohout as its sole inventor and lists DoubleTap as the assignee of the '831 Patent.

43.     However, members of the Heizer Group were inventors of the subject matter disclosed and claimed in the '831 Patent, including but not limited to Claim 1.

44.     During the course of the examination of the application that led to the '865 Design Patent, the applicant requested a filing priority date based on the December 20, 2010, filing date for the '458 Provisional Application.

45.     The PTO rejected the request of the applicant to claim priority of the application for the '865 Design Patent to be based on the December 20, 2010, filing date of the '458 Provisional Application.

46.     The PTO assigned a filing date for the '865 Design Patent Application of December 21, 2011.

47.     Under 35 U.S.C. § 171 design patents are to be issued to:  "[w]hoever invents any new, original and ornamental design for an article of manufacture . . ."

48.     Mr. Kohout did not invent any of the patentable subject matter covered by the claim of the '865 Design Patent, including Claims 1.

49.     Charles Heizer is the inventor of the '865 Design Patent.

## COUNT I

**(Correction of Named Inventor on U.S. Patent 8,495,831
Pursuant to 35 U.S.C. § 256)**

50.     The allegations of paragraphs 1 – 49 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.

51.     35 U.S.C. § 102(f), § 111, § 115, § 116 and § 171 require that a patent application be filed the name of the inventor or inventors for any invention claimed in the application. Under 35 U.S.C. § 115(a), "each individual who is the inventor or a joint inventor of the claimed invention in an application for patent shall execute an oath or declaration in connection with the application."   In accord with 35 U.S.C. § 115(b), such oath or declaration "shall contain statements that – (2) such individual believes himself or herself to be the original or an original joint inventor of a claimed invention in the application."

52.     Under 35 U.S.C. § 116 (a):  "When an invention is made by two or more persons jointly, they shall apply for a patent jointly and each make the required oath . . ."

53.     Mr. Kohout signed a declaration filed with the PTO upon the filing of the '513 Non-Provisional Application stating that he was the sole inventor of the inventions claimed in the '513 Application.  There was no amendment to that declaration at any later time up to the issuance of the '831 Patent.

54.     Under 35 U.S. C. §§ 116 and 256; whenever a person through error is not named as an inventor of an issued patent, the Court is empowered to order the Patent and Trademark Office to correct inventorship by issuing a certificate of correction for that patent to add such person(s) as co-inventor(s).

55.     Members of the Heizer Group were co-inventors under 35 U.S.C. § 116 (a) of claims of the '831 Patent.

56.     Through, error, persons in the Heizer Group were not listed in the '513 Application or '831 Patent as inventors.

57.     Mr. Kohout was not the sole inventor for the '513 Application or the '831 Patent.

**PRAYER FOR RELIEF**

58.     WHEREFORE, as to Count I of this Complaint, Plaintiffs respectfully request that the Court issue an order:

(A)     as authorized by 35 U.S.C. § 256 (b), directing the Commissioner for Patents for the United States Patent and Trademark Office to correct U.S. Patent No. 8,495,831 by issuing a certificate of correction adding persons in the Heizer Group as co-inventors thereon; and

(B)     that this Court award Plaintiffs costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT II

**(Obtaining '831 Patent Through Misappropriation of
Trade Secrets and Confidential Information)**

59.     Plaintiffs re-pleads, re-alleges and incorporates by reference paragraphs 1 through 58 of their Complaint all as if fully set forth herein.

60.     Defendants misappropriated the trade secrets and confidential information of Plaintiffs and breached their duty to Plaintiffs, in filing the '513 Patent Application, and in obtaining issuance of the '831 Patent, which Application and Patent incorporated such trade secrets and confidential information.

61.     Defendants caused the '513 Patent application to be filed which issued as the '831, Patent, which Defendants knew or should have known was misappropriation of Plaintiffs' confidential information and trade secrets.

**PRAYER FOR RELIEF**

62.     WHEREFORE, as to Count I of this Complaint, Plaintiffs respectfully request declaration by the Court that:

(A)     Plaintiffs have an undivided ownership interest in the '831 Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT III

**(Declaration of an Implied-in-Law Ownership Interest and Equitable Assignment)**

63.     The allegations of paragraph 1 through 62 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.

64.     Based on the course of dealings between Plaintiffs and Defendants, equity requires that Plaintiffs be held to have an implied-in-law ownership interest in the '831 Patent.

**PRAYER FOR RELIEF**

65.     WHEREFORE, as to Count I of this Complaint, Plaintiffs respectfully request a declaration by the Court that:

(A)     Plaintiffs have an undivided ownership interest in the '831 Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT IV

### (Implied-in-Law License)

66.     The allegations of paragraph 1 through 65 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.  Alternatively pleading, Plaintiffs' allege:

67.     Based on the course of dealings between Plaintiffs and Defendants, equity requires that Plaintiffs be held to have an implied-in-law license to practice the inventions claimed in the '831 Patent.

### PRAYER FOR RELIEF

68.     WHEREFORE, Plaintiffs alternatively request a declaration by the Court:

(A)     that Plaintiffs have an implied-in-law license to practice the inventions claimed in the '831 Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT V

### (Invalidity of '685 Design Patent for Failure to Name Inventor in Compliance with 35 U.S.C. §§ 102, 111, 115 and 171)

69.     The allegations of paragraph 1 through 68 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count

70.     35 U.S.C. §§ 102(f), 111, 115 and 171 require that a patent application be filed the name of the inventor or inventors for any invention claimed in the application.  Under 35 U.S.C. § 115, each individual who represent that he or she is an inventor for a patent application

must execute an oath or declaration stating that such individual believes himself or herself to be the original joint inventor of a claimed invention in the application.

71.     Mr. Kohout signed a declaration filed with the PTO, stating that he was the sole inventor for the subject matter claimed in the '263 Design Application for the '685 Design Patent.  There was no amendment to that declaration at any later time up to the issuance of the '685 Design Patent.

72.     Mr. Kohout was not an inventor for '685 Design Patent.

**PRAYER FOR RELIEF**

73.     WHEREFORE, as to Count I of this Complaint, Plaintiffs respectfully request a declaration from the Court:

(A)     that the '685 Design Patent is invalid because of failure to comply with naming of the inventor or inventors as required by 35 U.S.C. §§ 102(f), 111, 115 and 171; and

(B)     that this Court award Plaintiffs damages including, but not limited to disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable;

**COUNT VI**

**(Unenforceability of the '685 Design Patent due to Inequitable Conduct)**

74.     The allegations of paragraphs 1 through 73 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.

75.     As discussed above in Paragraphs 71, Mr. Kohout signed a Declaration under oath of sole inventorship for the '263 Design Application that was filed with the PTO and that led to the issuance of the '685 Design Patent.

76.     Mr. Kohout was substantively involved in the prosecution of the '263 Application which issued as the '685 Design Patent.

77.     Mr. Kohout knew that Mr. Charles Heizer was an inventor for the claim in the '263 Design Application and in the '685 Design Patent.

78.     Mr. Kohout did not advise the PTO that Mr. Charles Heizer was an inventor of subject matter claimed in the '263 Design Application for the '685 Design Patent.

79.     Mr. Kohout did not take steps to add Mr. Charles Heizer as a named inventor on the '263 Design Application for the '685 Design Patent.

80.     The information concerning Mr. Charles Heizer being a person who should have been a named inventor which was withheld from the PTO, is material to patentability, and but for that material omission the '685 Design Patent would not have been issued.

81.     Mr. Kohout's failure to provide the foregoing information about inventorship was intentional.  In so doing, Mr. Kohout intended to deceive the PTO and Examiner of the '513 Application for the '685 Design Patent that he was the sole inventor of the inventions described therein.

82.     Mr. Kohout deceived the PTO and the Examiner so that Mr. Charles Heizer and Heizer Defense would not have an ownership interest in the '685 Design Patent.

83.     The withholding of information material to patentability with the intent to deceive the PTO constitutes inequitable conduct.

84.     The '685 Design Patent is unenforceable due to inequitable conduct.

## PRAYER FOR RELIEF

85.     WHEREFORE, as to Count I of this Complaint, Plaintiffs respectfully request a declaration by the Court:

(A)     that the '685 Design Patent is unenforceable due to inequitable conduct; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT VII

### (Correction of Named Inventor on U.S. Patent 8,495,831
### Pursuant to 35 U.S.C. § 256)

86.     The allegations of paragraphs 1 – 85 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.  Alternatively pleading, Plaintiffs plead as follows:

87.     Charles Heizer is a co-inventor of the claim of the '685 Design Patent in accordance with 35 U.S.C. §116.

88.     Through error, Charles Heizer was not listed in the '263 Design Application or '685 Design Patent as an inventor of the invention claimed in the '685 Design Patent.

### PRAYER FOR RELIEF

89.     WHEREFORE, as to Count VII of this Complaint Plaintiffs alternatively requests that in accord with the Court issue an order:

(A)     as authorized by 35 U.S.C. §256 (b), directing the Commissioner for Patents for the United States Patent and Trademark Office to correct U.S. Design Patent No. D686,685 by issuing a certificate of correction adding Mr. Charles Heizer as a co-inventor thereon; and

(B)     that this Court award Plaintiffs costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

<u>**COUNT VIII**</u>

**(Obtaining '831 Patent Through Misappropriation of
Trade Secrets and Confidential Information)**

90.     Plaintiffs repleads, re-alleges and incorporates by reference paragraphs 1 through 89 of their Complaint all as if fully set forth herein.  Alternatively pleading, Plaintiffs plead as follows:

91.     Defendants misappropriated the trade secrets and confidential information of Plaintiffs and breached their duty to Plaintiffs, in filing the '263 Design Patent Application, and in obtaining issuance of the '685 Design Patent, which Application and Patent incorporated such trade secrets and confidential information.

92.     Defendants caused the '263 Design Patent Application to be filed which issued as the '831 Patent, which Defendants knew or should have known was misappropriation of Plaintiffs' confidential information and trade secrets.

**PRAYER FOR RELIEF**

93.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Plaintiffs alternatively request a declaration by the Court:

(A)     that Plaintiffs have an undivided ownership interest in the '685 Design Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT IX

### (Declaration of an Implied-in-Law Ownership Interest and Equitable Assignment)

94.     The allegations of paragraph 1 through 93 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.  Alternatively pleading, Plaintiffs plead as follows:

95.     Based on the course of dealings between Plaintiffs and Defendants, equity requires that Plaintiffs be held to have an implied-in-law ownership interest in the '685 Design Patent.

### PRAYER FOR RELIEF

96.     WHEREFORE, as to Count I of this Complaint, Plaintiffs alternatively respectfully request a declaration by the Court:

(A)     that Plaintiffs have an undivided ownership interest in the '685 Design Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interests, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

## COUNT X

### (Implied-in-Law License)

97.     The allegations of paragraph 1 through 96 of this Complaint are repeated, re-alleged and incorporated herein as if fully set forth in this Count.  Alternatively pleading, Plaintiffs allege:

98.     Based on the course of dealings between Plaintiffs and Defendants, equity requires that Plaintiffs be held to have an implied-in-law license to practice the invention claimed in the '685 Design Patent.

**PRAYER FOR RELIEF**

99.     Plaintiffs alternatively request a declaration by the Court:

(A)     that Plaintiffs have an implied-in-law license to practice the inventions claimed in the '685 Design Patent; and

(B)     that this Court award Plaintiffs damages including, but not limited to, disgorgement of profits and/or royalties; interest, costs, attorneys' fees, and such further relief as this Court deems proper, just and equitable.

**<u>JURY TRIAL DEMAND</u>**

In accordance with Rules 5 and 38, Federal Rules of Civil Procedure, Plaintiffs hereby demands a jury trial on all issues triable to a jury.

*******************************

Respectfully submitted,

CARMODY MacDONALD P.C.

By: /s/ Christopher P. Kellett
Teresa Dale Pupillo, #42975 MO
Christopher P. Kellett, #64655 MO
120 South Central Avenue, Suite 1800
St. Louis, Missouri  63105
(314) 854-8600  Telephone
(314) 854-8660  Facsimile
tdp@carmodymacdonald.com
cpk@carmodymacdonald.com

and

POLSTER, LIEDER, WOODRUFF & LUCCHESI, L.C.

By: /s/ McPherson D. Moore
McPherson D. Moore, #26056 MO
William B. Cunningham, #20998 MO
Scott A. Smith #55870 MO
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131-3615
(314) 238-2400  Telephone
(314) 238-2401  Facsimile
mmoore@polsterlieder.com
wcunningham@polsterlieder.com
ssmith@polsterlieder.com

*Attorneys for Plaintiffs*